UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BARBARA J. METELLI, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:04-CV-429 RM |
| ) | |
| INDIANA UNIVERSITY ) | |
| SOUTH BEND, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

This matter comes before the court on Indiana University South Bend's motion for summary judgment on all claims brought against it by Barbara Metelli, who is representing herself. The parties have fully briefed the motion, and, for the following reasons, the court grants the motion.

The following facts are viewed in the light most favorable to Ms. Metelli, with all reasonable inferences taken in her favor. Within IUSB is the Rasclin School of Arts, which includes the Music Area. The Music Area employs both full-time tenured and non-tenured faculty and some adjunct faculty. The decision to appoint or reappoint non-tenured faculty is made after an annual review consisting of several levels of reviews and non-binding recommendations; ultimately the binding decision to appoint or reappoint rests solely with the IUSB Chancellor.

IUSB hired Ms. Metelli as a non-tenured associate professor in the Music Area in 1998. After being recommended for reappointment (either with or without

reservations) for each of the preceding years, in January of 2003 Dean Thomas Miller (the Dean of the School of Arts) recommended to the IUSB Vice-Chancellor that Ms. Metelli not be reappointed. Upon learning of this recommendation, but before the Vice-Chancellor reviewed this decision and made a non-binding recommendation to the Chancellor of IUSB, Ms. Metelli resigned from her position in a letter to the Chancellor because the working conditions of her employment had become "intolerable." This resignation became effective May 2004, the date her then current appointment completed.

On November 17, 2003, Ms. Metelli filed a charge of discrimination with the EEOC alleging IUSB discriminated against her on the basis of her gender, age, and retaliated against her in violation of Title VII. When the EEOC issued its right to sue letter, Ms. Metelli filed a complaint alleging IUSB violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and 42 U.S.C. § 1981.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving

party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Neither party addressed the issue, but Ms. Metelli's complaint includes reference to 42 U.S.C. § 1981, which provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Ms. Metelli hasn't advanced any claim that she was subjected to any type of discrimination prohibited by § 1981, and even if she had, such a claim finds no support in the record. To the extent Ms. Metelli asserts a claim under § 1981, summary judgment is appropriate.

IUSB argues that Ms. Metelli cannot bring her age discrimination suit because the ADEA cannot be used as a vehicle to seek monetary damages from a state entity. Indiana University is the state university of Indiana. IND. CODE § 20-

12-23-1. In <u>Kimmel v. Florida Bd. of Regents</u>, 528 U.S. 62 (2000), the Supreme Court concluded that the ADEA (upon which Ms. Metelli's age discrimination claim rests) was "not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment." <u>Id.</u> at 91. The practical effect of this holding precludes a private citizen (like Ms. Metelli) from suing a state entity (like IUSB) because the state enjoys immunity from such suits by way of the Eleventh Amendment of the Constitution. As the court of appeals noted, "Indiana University enjoys the same Eleventh Amendment immunity as the State of Indiana itself." <u>Woods v. Indiana Univ.-Purdue Univ. at Indianapolis</u>, 996 F.2d 880, 883 (7th Cir. 1993). IUSB is immune from suits brought under the ADEA seeking monetary awards, *See* <u>Gore v. Indiana Univ.</u>, 416 F3d 590, 591 (7th Cir. 2005) (noting with approval the district court's dismissal of a plaintiff's ADEA claim against Indiana University based on <u>Kimmel</u>), and Ms. Metelli cannot proceed with her ADEA claim.

Finally, Ms. Metelli asserts IUSB discriminated against her on the basis of her gender and retaliated against her when she engaged in Title VII protected activity. IUSB first argues that all of Ms. Metelli's Title VII claims are time-barred because she filed her EEOC charge 308 days after she resigned. The court does not agree.

An individual must initiate a Title VII claim by filing a charge of discrimination with the EEOC within 300 days when the proceedings are initiated with a state or local agency that has the power to grant the requested relief. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); <u>Doe v. R.R. Donnelley & Sons Co.</u>,

4

42 F.3d 439, 445 (7th Cir. 1994) ("In a deferral state, such as Indiana, a charge must be filed within 300 days of the occurrence of the act that is the basis of the complaint."). IUSB seeks to establish the start time for the limitations period as the day Ms. Metelli submitted her letter of resignation, but hasn't provided any argument as to why that should be the case. Ms. Metelli's letter indicated her resignation would be effective at the end of her appointment in 2004, and other than pointing out the date of submission, IUSB has not pointed to any definitive evidence or made any persuasive argument that would render Ms. Metelli's entire EEOC charge for discrimination and retaliation untimely. Lines of cases exist that might well support IUSB's position, but Ms. Metelli, who has no attorney, hasn't been given a chance to respond to those cases.

This doesn't render timely every event upon which Ms. Metelli rests her Title VII claims. On the face of her EEOC charge, Ms. Metelli specifically identified January 21, 2003 through November 14, 2003 as the time frame in which IUSB allegedly discriminated and retaliated against her. IUSB argues that this self-imposed time frame, when coupled with Title VII's 300 day limitations period, limits Ms. Metelli's claims to events occurring within those dates. Ms. Metelli's response doesn't address the issue, and so doesn't provide the court with any reason to look beyond the 300-day limitation period allowed by law.[1]

---

[1] As addressed below, the record does not support Ms. Metelli's claims even when the court looks to the events occurring in this extended time frame.

Consequently, the court limits the scope of her claims to the events that occurred within 300 days before November 14, 2003.

To prevail on her gender discrimination claim at summary judgment, Ms. Metelli must "put[] in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or . . . establish[] a prima facie case under the *McDonnell Douglas* formula." Rudin v. Lincoln Land Cmty. College, 420 F.3d 712, 719 (7th Cir. 2005) (*quoting* Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 940 (7th Cir. 1997)). Under the direct method of proof, Ms. Metelli may present direct evidence of discrimination, "which, if believed by the trier of fact, [would] prove the particular fact in question without reliance upon inference or presumption," Eiland v. Trinity Hosp., 150 F.3d 747, 751 (7th Cir. 1998), or circumstantial evidence, which would allow the trier of fact "to infer intentional discrimination by the decisionmaker." Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003).

Under the indirect method, Ms. Metelli may establish a prima facie case of gender discrimination under the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), by showing that (1) she belongs to a protected class, (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) her employer treated similarly-situated employees outside her protected class more favorably. Logan v. Kautex Textron N.A., 295 F.3d 783, 788 (7th Cir. 2001). If she does so, IUSB must produce a non-discriminatory reason for its action; if it does so, Ms. Metelli must

then present sufficient evidence that would enable a trier of fact to find that the explanation is a pretext for discrimination. Id. at 788. It is very important to note that "[d]espite this burden-shifting approach, the ultimate burden of proof to establish discrimination remains at all times with the plaintiff." Butts v. Aurora Health Care, Inc., 387 F.3d at 924.

      To prevail on her retaliation claim, Ms. Metelli must, under the direct method, present either direct or circumstantial evidence of retaliation, Stone v. City of Indianapolis Pub. Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002), or establish a prima facie case of retaliation under the indirect method by demonstrating that after she filed a charge with the EEOC, she was subjected to an adverse employment action even though she was performing her job satisfactorily, and no similarly situated employee who didn't file a charge was treated more favorably. Mannie v. Potter, 394 F.3d 977, 984 (7th Cir. 2005). If Ms. Metelli establishes a prima facie case of retaliation, the burden shifts to IUSB to present evidence of a legitimate, non-discriminatory reason for the employment action, and if it does so, Ms. Metelli must demonstrate that its reason was a pretext and not the real reason for her adverse employment action and that her participation in the protected activity was, in fact, the real reason for the adverse employment action. Little v. Illinois Dept. of Revenue, 369 F.3d 1007, 1012 (7th Cir. 2004) ("Pretext exists where the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination.").

7

IUSB is entitled to summary judgment on both claims because Ms. Metelli cannot establish a prima facie case of either gender discrimination or retaliation. First, she did not suffer an adverse employment action. In her response, Ms. Metelli acknowledges that she resigned from her position in January 2003, and the record does not support a finding that she was constructively discharged.[2] "[T]he prospect of being fired at the conclusion of an extended process is not itself constructive discharge." Cigan v. Chippewa Falls School Dist., 388 F.3d 331, 334 (7th Cir. 2004). The record shows that Ms. Metelli resigned after Dean Miller recommended she not be reappointed, but before the Chancellor made her binding decision as to whether Ms. Metelli would be terminated. Thus, insofar as Ms. Metelli argues her adverse employment action was that she was constructive discharged, the court cannot agree.

In regards to her gender discrimination claim, Ms. Metelli states she received less pay than other male professors in the Music Area during in 2003, but provides too little evidence (in the form of affidavits and/or authenticated documentary evidence of a similarly situated male employee's salary during the relevant time period) to support the assertion. The only Title VII protected activity Ms. Metelli identifies in regards to her retaliation claim is a brief reference of a sexual harassment claim lodged by a student against a professor. Even when the court construes this reference liberally and infers that Ms. Metelli supported the

---

[2] Ms. Metelli's letter of resignation indicated she found her working conditions "intolerable." Construing her filings liberally, and in the interest of justice, the court addresses whether she was constructively discharged even though the parties did not fully brief the issue.

8

sexual harassment claim, the record contains no evidence connecting any identifiable adverse employment action to her support of the sexual harassment claim.

The defendant's June 17 notice warned Ms. Metelli that in responding to the summary judgment motion, she had to submit adequate evidence (as defined by Rule 56) coupled with legal argument showing she would be entitled to proceed with her claims to trial. *See* Sanders v. Village of Dixmoor, Ill., 178 F.3d 869, 870 (7th Cir. 1999) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). Otherwise, "summary judgment, if appropriate, [would] be entered against [her]." FED. R. CIV. P. 56(e). While the court is "[m]indful that pro se pleadings are held to less exacting standards than those prepared by counsel . . . [it] must also insist on compliance with procedural rules such as" Rule 56. Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001); *see also* Members v. Paige, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced."). The record contains inadequate evidence to allow Ms. Metelli's Title VII claims to proceed, and Rule 56 requires the court to enter summary judgment in favor of IUSB.

An additional point remains. Both parties argue that the other falsified certain student evaluations in support of their respective positions. The court finds no indication that IUSB falsified the student evaluations it submitted. The record does, however, appear to depict cutting and pasting of student evaluations

9

submitted by Ms. Metelli to appear more complimentary of her teaching. If such an attempt to alter evidence occurred, it might well justify judgment for IUSB. Because IUSB is entitled to judgment as a matter of law even on the record that Ms. Metelli contributed to, the court need not reach that issue.

For the foregoing reasons, the court GRANTS the defendants' summary judgment motion [Doc. No. 31], Ms. Metelli's complaint is DISMISSED WITH PREJUDICE in its entirety, and the Clerk is ORDERED to close this case.

SO ORDERED.

ENTERED:  March 1, 2006

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc: attorneys of record
B. Metelli